**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re | ) | |
| AMELIA ISLAND COMPANY,[1] a Delaware corporation, | ) | Case No. 09-bk-9601 |
| | ) | Chapter 11 |
| Debtor. | ) | |

**STUTSMAN THAMES & MARKEY,**
**P.A.'S FIRST INTERIM APPLICATION FOR**
**ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS**

| | |
|---|---|
| Name of Applicant: | Stutsman Thames & Markey, P.A. |
| Authorized to Provide Professional Services to: | Amelia Island Company |
| Date of Retention: | August 22, 2009 |
| First Interim Period: | November 11, 2009 - February 28, 2010 |
| Amount of Compensation Requested: | $308,948.75 |
| Amount of Expense Reimbursement Requested: | $12,900.96 |
| Total Fees and Expenses Requested: | $321,849.71 |
| Fees and Expenses Received During Application Period: | $217,415.52 |
| Unpaid Amount Requested: | $104,434.19 |

[1] The tax identification number of the Debtor is 57-0527665. The address of the principal office of the Debtor is 6800 First Coast Highway-South, Amelia Island, Florida 32034, Post Office Box 3000, Amelia Island, Florida 32035-1000.

Stutsman Thames & Markey, P.A. ("Applicant") files this interim application pursuant to 11 U.S.C. §§ 330 and 503(b) for the entry of an order approving its compensation for services rendered and authorizing the reimbursement of costs advanced during the pendency of this Chapter 11 case and allowing same as Chapter 11 administrative expense, and in support of the application states:

1. Debtor, Amelia Island Company ("Debtor"), developed and operates Amelia Island Plantation, a 1,350 acre AAA Four Diamond resort located on the Atlantic Ocean and Intercoastal waterway on Amelia Island, Florida. The resort includes a 249 room deluxe oceanfront hotel, a 49,000 square foot conference center, 4 golf courses, 9 restaurants, a beach club, a spa and a shopping village. The company employs approximately 825 people.

2. On November 13, 2009 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3. Applicant's employment as Chapter 11 counsel was approved by order dated December 22, 2009 [Docket No. 149].

4. From November 11, 2009 through February 28, 2010, Applicant devoted 1,075.75 hours in attorney and paralegal time towards this Chapter 11 reorganization for which it now seeks allowance as a Chapter 11 administrative expense of $308,948.75. Attached as **Exhibit A** is a composite daily summary in greater detail of Applicant's services rendered in this case from November 11, 2009 through February 28, 2010, which summary includes a statement of the time devoted each day to this case by the individual attorneys and paralegals involved. This daily summary is derived from individual time slips, completed generally as services were rendered, which contain a description of those services.

5. In connection with the rendering of such services, Applicant disbursed for actual, necessary out-of-pocket expenses in connection with representation of Debtor in the amount of $12,900.96. Such advances include photocopying charges, postage, court reporter fees and filing fees, as more particularly described in **Exhibit A** attached hereto.

6. Prior to the Petition Date, Applicant received a retainer of $160,000. In accordance with the Court's order establishing interim compensation procedures, the retainer has been applied to post-petition billings, and Applicant has received additional post-petition payments from the Debtor totaling $57,415.52, leaving a balance due for the period ending February 28, 2010 of $104,434.19 (assuming all requested fees and costs are approved). A summary of all billings and payments received by Applicant is set forth below:

| **Billing Period** | **Amount** | **Amount Paid** | **Date Paid** |
|---|---|---|---|
| 11/30/2009 | $73,474.34 | $73,474.34 | 12/13/2009 |
| 12/31/2009 | 84,384.03 | 84,384.03 | 01/15/2010 |
| 01/31/2010 | 73,716.60 | 2,141.63 | 02/25/2010 |
| | | 57,415.52 | 03/02/2010 |
| 02/28/2010 | 87,845.74 | 0.00 | |
| 02/28/2010 | 2,429.00 | 0.00 | |
| **TOTALS:** | **$321,849.71** | **$217,415.52** | |
| **NET BALANCE DUE**: | | **$104,434.19** | |

7. In considering the criteria of *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874 (11th Cir. 1990) and *Johnson v. Georgia Highway Expressway, Inc.*, 448 F.2d 714 (5th Cir. 1974), for the determination of a reasonable attorney's fee, the following

considerations justify the allowance for a fee to Applicant in the amount of its ordinary hourly rates for the time it has devoted to the representation of Debtor:

a. The Time and Labor Required. Paragraph 4 above and Exhibit A attached hereto reflect the time and labor required to render the necessary services to Debtor. In view of the complexity of the case, Applicant submits that the time and labor expended were reasonable and necessary to achieve the results realized to date.

b. The Novelty and Difficulty of the Services. The case is large and complex. As stated above, Debtor operates a 1,350 acre AAA Four Diamond resort and private club that includes a 249 room deluxe oceanfront hotel, a 49,000 square foot conference center, 4 golf courses, 9 restaurants, a beach club, a spa and a shopping village. This vast array of facilities secures debt in excess of $50 million, excluding claims of club members for a return of refundable deposits in the face amount of approximately $46 million. The majority of the secured debt is held by PRIAC, Compass Bank and the National Bank of South Carolina. PRIAC's debt is secured by the Amelia Inn, the Beach club, the Club, the Conference Center, plus other resort properties. Collateral securing Compass Bank's debt includes the Spa & Retail Village, the laundry equipment, the Kountry Inn, the Links Lodge soft costs, Brady Point Preserve lots, the first $2 million in accounts receivable, the Falcons Nest, the office complex, and vehicles and miscellaneous equipment. NBSC's debt is secured primarily by the Amelia River Golf Course and Clubhouse.

Debtor is pursuing a sale of assets through this Chapter 11 case, though it has also received a proposal for an equity infusion from one group of investors. The

trifurcation of Debtor's assets described above complicates the sale and investment process because it is still unclear whether a purchaser for all Debtor's assets will emerge, be the successful bidder at auction, and present an offer that satisfies the claims of all secured creditors. Nor is it clear whether each secured lender is fully secured or whether the sale of each secured lenders' collateral will result in a deficiency claim. For instance, Debtor has initiated the process of turning over the Amelia River Golf Course to NBSC because Debtor believes that it is no longer economically viable to operate the course and the debt on the course exceeds the fair market value of the course. Debtor and NBSC may, however, enter into a leaseback or management agreement to ensure guests and members have access to the facility.

Other complications revolve around the plan confirmation process itself. For example, each secured lender has voiced its desire to preserve the right to credit bid its collateral, which creates the potential that Debtor's assets will be sold piecemeal and for less than what the entire resort would bring if sold as a single integrated unit. Complicating matters further, the club's organizational and constituent documents create certain covenants that run with the land and grant members use and access rights to club facilities. Pursuant to a non-disturbance agreement and independent covenant between PRIAC and the Club (the "NDA"), any future owner of the Club must continue to recognize the use rights and privileges of club members under the club membership plan, or refund all deposits. Although Debtor believes that the NDA preserves only the use rights and privileges of members to enjoy the Club, and does not guarantee or secure the repayment of any refund deposits or vested credits,

Amelia Island Club, Inc. and other parties in interest have argued that pursuant to the NDA, the members rights to refund claims are entitled to priority payment over the claims of PRIAC.

Although Debtor believes that it has made great strides in achieving a consensual resolution of the foregoing disputes, and establishing a framework for a sale of the company's assets, much work remains to be done. Balancing the competing interests at work in this case is a time-consuming, complicated and nuanced process that remains ongoing.

c. The Skill Requisite to Perform the Legal Services Properly. This is no run of the mill case. The representation of Debtor required specialized knowledge of bankruptcy law and experience with complex Chapter 11 reorganizations. Applicant believes that it possesses such skills and utilized them in connection with this case.

d. The Preclusion of Other Employment by the Attorneys Due to Acceptance of this Case. Applicant is aware of no other specific employment which was precluded by the acceptance of this case. The size of this Chapter 11 case has, however, at times taxed the personnel resources of the firm, and has resulted in a high concentration of billings in a single matter, which in turns places the firm at substantial risk if the invoices are not paid timely.

e. The Customary Fee. Applicant performed its services in these jointly administered cases during the interim period at hourly rates ranging from $95 to $345 which are consistent with or below the fees charged by other bankruptcy

professionals in this market. The hourly fees charged by the individual lawyers and paralegals are as follows:

| Timekeeper | Billing Rate | No. of Hours | Total Fees |
|---|---|---|---|
| Richard R. Thames, Attorney | $345.00 | 347.70 | $119,956.50 |
| Bruce E. Stutsman, Attorney | $325.00 | 48.60 | $15,795.00 |
| Bradley R. Markey, Attorney | $325.00 | 95.90 | $31,143.50 |
| Eric N. McKay, Attorney | $295.00 | 339.50 | $100,152.50 |
| Loretta A. Talbert, Attorney | $225.00 | 124.65 | $27,558.25 |
| Robert A. Heekin, Jr., Attorney | $225.00 | 4.30 | $967.50 |
| Thomas C. Wagner, Paralegal | $165.00 | 32.00 | $5,280.00 |
| Shelley A. Jenkins, Paralegal | $125.00 | 6.70 | $837.50 |
| Amy K. Bishop, Paralegal | $95.00 | 76.40 | $7,258.00 |

f. Whether the Fee was Fixed or Contingent. The basis of Applicant's fee is the customary hourly rates charged by the Applicant for services by the attorneys involved. There is no premium ir discounted billing involved. No amount of the fee has been guaranteed by any third party.

g. Time Limitations Imposed by Debtor or Other Circumstances. This Chapter 11 case has been extraordinarily consumptive of Applicant’s resources and limited time availability. The goal of this reorganization is to preserve over 825 jobs through either a reorganization or an orderly sale of substantially all the Debtor’s assets.

h. Amount Involved and Results Obtained. The secured debts in this case total approximately $46 million. Unsecured debt totals approximately $55

million. Though a plan has not yet been submitted, substantial progress towards reorganization or sale has been made. Among other things, the Debtor has (a) complied with the various reporting requirements imposed by the U. S. Trustee, including the submission of initial and monthly reports, (b) prepared and filed statements of financial affairs and schedules of assets, liabilities and contracts consistent with the Bankruptcy Code and Bankruptcy Rules, (c) complied with due diligence requests from the Creditors' Committee, turning over documents for review by advisors to the Creditors' Committee, (d) obtained court approval under § 365 of the Bankruptcy Code to extend the time period for assuming or rejecting unexpired leases of non-residential real property, (e) sought authority to reject various unexpired executory contracts and unexpired leases relating to personal property and services and is continuing to analyze its remaining executory contracts and unexpired leases to determine whether rejection, assumption or assignment of such leases is in the best interests of the estate, (f) obtained Court approval to suspend payments under a lease of non-residential real property with the City of Fernandina Beach, Florida, (g) obtained Court approval to reject a consulting agreement with Richard A. Cooper, (h) obtained an extension of the exclusivity period and (g) in conjunction with its secured lenders, Amelia Island Club, Inc. and the Creditors' Committee, has explored vetted various offers for acquisition of the resort, the last factor being the most consumptive of resources to date. Templates for a plan of reorganization and disclosure statement have also been drafted, and are poised for filing as soon as the terms of sale or investment are finally negotiated. Applicant believes that its efforts

during the application period will therefore prove to be of substantial benefit to the estate.

i. Experience, Reputation and Ability of Attorneys. Much of the work on this matter was performed by Richard R. Thames, a lawyer with over 21 years of experience in bankruptcy related matters. Mr. Thames is a certified by the American Board of Certification as a Business Bankruptcy Specialist. He is also the past President of the Jacksonville Bankruptcy Bar Association, and a former law clerk for the Honorable George L. Proctor, United States Bankruptcy Court, Middle District of Florida. Mr. Thames was assisted in the representation primarily by Eric N. McKay, an attorney with 9 years of bankruptcy experience with Jones Day, a top-tier, nationally ranked law firm.

j. The Undesirability of this Case. This case was not particularly "undesirable," although the time commitments associated with the case are burdensome for a firm of Applicant's size.

k. The Nature and Length of the Professional Relationship with the Client. Applicant was first retained by Debtor in the Fall of 2009 and had no relationship with Debtor prior to the initiation of this Chapter 11 case.

l. Awards in Similar Cases. The amount sought by Applicant is not unreasonable in terms of awards in similar cases where comparable results have been obtained through the diligence and skill of counsel.

WHEREFORE, for the foregoing reasons, Applicant requests that the Court (i) approve and allow $308,948.75 as compensation for professional services rendered in

connection with this Chapter 11 case during the period November 11, 2009 through February 28, 2010, and $12,900.96 in cost reimbursement through such date, for a total amount of $321,849.71, and (ii) grant such other relief as is appropriate.

**STUTSMAN THAMES & MARKEY, P.A.**

By *\/s/ Richard R. Thames*
Richard R. Thames
Eric N. McKay

Florida Bar Number 0718459
Florida Bar Number 0010215
50 N. Laura Street, Suite 1600
Jacksonville, Florida 32202
(904) 358-4000
(904 358-4001 (Facsimile)
rrt@stmlaw.net
enm@stmlaw.net

Attorneys for Amelia Island Company

**Certificate of Service**

I hereby certify that, on March 24, 2010, the foregoing pleading was transmitted to the Clerk of the Court for uploading to the Case Management/Electronic Case Files ("CM/ECF") System, which will send a notice of electronic filing to the Office of the United States Trustee, 135 W. Central Blvd., Room 620, Orlando, Florida 32280 and all parties who have consented to receiving electronic notifications in this case.

*/s/ Richard R. Thames*

Attorney

77463