**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 3:09-bk-09601 |
| AMELIA ISLAND COMPANY | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| _____ | ) | |

## NOTICE OF APPEAL

PRIAC Realty Investments, LLC ("PRIAC"), appeals under Title 28, United States Code, Section 158(a) or (b) from the following order of the bankruptcy judge in this matter: Amended Sale Procedures Order (A) Authorizing the Debtor to Enter Into an Asset Purchase Agreement For the Sale of Substantially All the Debtor's Assets; (B) Approving Bidding Procedures and Overbid the Protections in Connection Therewith; (C) Approving the Form and Manner of Notice; and (D) Approving Assumption and Assignment Procedures entered by the Court on July 9, 2010 (D.E. 633). A true and correct copy of the Amended Sales Procedure Order that PRIAC appeals from is attached as Exhibit "1" to this Notice of Appeal.

The names of all parties to the order appealed from and the names, address, and telephone numbers of their respective attorneys are listed in the Certificate of Service.

**VOLPE, BAJALIA, WICKES, ROGERSON AND WACHS**

By: _____
John T. Rogerson, III
Florida Bar No. 832839
Michael L. Duncan
Florida Bar No. 50946
501 Riverside Avenue, 7th floor
Jacksonville, FL 32202
(904) 355-1700
(904) 355-1797 (facsimile)
jrogerson@vbwr.com
mduncan@vbwr.com

and

**ALSTON & BIRD, LLP**


By: _/s/ Grant T. Stein_____
Grant T. Stein
Wendy R. Reiss
1200 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000
(404) 881-7777 (facsimile)
grant.stein@alston.com
wendy.reiss@alston.com

Attorneys for Creditor, PRIAC

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was transmitted to Amelia Island Company, *Debtor*, P. O. Box 3000, Amelia Island, Florida, 32032-1000; Richard Thames, Esq., *Attorney for Debtor*, 50 N. Laura Street, Suite 1600, Jacksonville, Florida, 32202 and to the Clerk of the Court for uploading to the Case Management / Electronic Case Files system, which will send a notice of electronic filing to all creditors and parties in interest who have consented to receiving electronic notices in this case. A copy of this notice was also furnished by mail to the 113A-3 mailing matrix list of creditors and parties in interest as reflected on the attached hereto on this 15th day of July, 2010.

_____
Attorney

3402.00100/1510

Easy Peel™ Labels
Use Avery® Template 5160®

▲ Feed Paper

Bend along line to
expose Pop-Up Edge™

🅰 AVERY® 8460™

Label Matrix for local noticing
113A-3
Case 3:09-bk-09601-PMG
Middle District of Florida
Jacksonville
Thu Jul 15 14:44:36 EDT 2010

Amelia Island Plantation Community Assoc.
c/o Robert S. Bolan
P.O. Box 3000
Amelia Island, FL 32035-3000

Ascension Capital Group, Inc.
Attn: Compass Bank Dept.
P.O. Box 201347
Arlington, TX 76006-1347

Beachside Villas Condo. Assoc.
c/o Edward M. Whelan, Esq.
225 Water St., #1750
Jacksonville, FL 32202-5137

Clear Channel Outdoor, Inc.
P.O. Box 402379
Atlanta, GA 30384-2379

Crowley, James
1 Red Cedar Road
Amelia Island, FL 32034-5035

Deere Credit, Inc.
6400 NW 86th St.
P.O. Box 6600
Johnston, IA 50131-6600

Ford Motor Credit Company
c/o Schuyler Stewart Smith
118 West Adams Street, #800
Jacksonville, FL 32202-3866

Heritage Paper Co. Inc.
c/o David B. Clevinger
4011 Morton St.
Jacksonville, FL 32217-2271

IKON Financial Services
Bankruptcy Admin.
1738 Bass Rd.
P.O. Box 13708
Macon, GA 31208-3708

Amelia Island Club, Inc.
c/o Betsy Cox
Rogers Towers, P.A.
1301 Riverplace Blvd., Suite 1500
Jacksonville, FL 32207-1811

Amelia Realty, Inc.
136 East Bay St., Ste. 301
Jacksonville, FL 32202-5409

Atlantic Seafood
316 Ash Street
Fernandina Beach, FL 32034-4232

Beachside Villas Condominium Association, In
c/o James O. Birr III, Esquire
Gunster, Yoakley & Stewart, P.A.
225 Water Street, Suite 1750
Jacksonville, FL 32202-5137

Compass Bank
c/o Alan M. Weiss, Esq.
50 North Laura St., Ste. 3900
Jacksonville, FL 32202-3622

Datavision
c/o Sherry Chary
860 Marina Dr.
Weston,FL 33327-2122

Deere Credit, Inc.
c/o A. Christopher Kasten, II, Esq.
Bush Ross, P.A.
PO Box 3913
Tampa, FL 33601-3913

George E. Ridge
c/o Tiffiny Douglas Safi
Cooper, Ridge & Safi, P.A.
136 East Bay Street, Suite 301
Jacksonville, FL 32202-5409

IBM Credit
2 Lincoln Centre
Oakbrook Terrace Il 60181-4295

IKON Office Solutions
Recovery & BK Group
3920 Arkwright Rd., #400
Macon, GA 31210-1748

Amelia Island Plantation Comm. Assoc. Inc.
c/o Lance Cohen, Esq.
1723 Blanding Blvd., Ste. 102
Jacksonville, FL 32210-1947

Amelia Realty, Inc.
c/o Richard A. Cooper
P.O. Box 3000
Amelia Island, FL 32035-3000

Atlantic Seafood Company
10 Ash St.
Fernandina Beach, FL 32034-4274

Clear Channel Outdoor
Attn: Corporate Bankruptcy Specialist
P.O. Box 591790
San Antonio, TX 78259-0139

Creditors' Committee
c/o Shane Ramsey, Esq.
1100 Peachtree St., Suite 2800
Atlanta, GA 30309-4528

Datavision Tech
860 Marina Dr.
Weston, FL 33327-2122

Dynamix Group, Inc.
c/o Elaine N. Brasch, Esq.
255 Walhalla Court
Atlanta, GA 30350-1191

Gudbranson, Robert N., Trustee
c/o George E. Ridge
136 East Bay St., Ste. 301
Jacksonville, FL 32202-5409

IKON Financial Services
1738 Bass Rd.
Macon, GA 31210-1043

James M. and Beverly C. Crowley
1 Red Cedar Road
Amelia Island, FL 32034-5035

Étiquettes faciles à peler
Utilisez le gabarit AVERY® 5160®

▲ Sens de chargement

Repliez à la hachure afin de
révéler le rebord Pop-Up™

www.avery.com
1-800-GO-AVERY

Easy Peel® Labels
Use Avery® Template 5160®

 Feed Paper

Bend along line to
expose Pop-Up Edge™

 AVERY® 8460

Martin Coffee Company, Inc.
c/o Ben Johnson
1633 Marshall St.
Jacksonville, FL 32206-6011

Microsoft Corporation and Microsoft Licensin
c/o Maria Milano
Riddell Williams P.S.
1001 4th Ave. Ste 4500
Seattle, WA 98154-1065

Microsoft Licensing, GP
c/o Maria Ann Milano
1001 4th Avenue, Suite 4500
Seattle, WA 98154-1192

NVHG Acquisitions, LLC
c/o David A. Samole, Esq.
2525 Ponce De Leon, 9th Fl.
Miami, FL 33134-6039

Nassau County Board of County Commissioners.
as Nassau-Amelia Utilities
c/o Jeffrey R. Dollinger, Esq.
1 SE 1st Avenue
Gainesville, FL 32601-6240

Nassau County Tax Collector
c/o C. Popham Decunto, Esq.
6550 St. Augustine Rd., Ste. 105
Jacksonville, FL 32217-2847

National Bank of South Carolina
c/o David E. Otero, Esq.
Akerman Senterfitt
50 North Laura Street, Suite 2500
Jacksonville, FL 32202-3646

National Bank of South Carolina
c/o Raye Curry Elliott, Esq.
50 North Laura St., Ste. 2500
Jacksonville, Fl 32202-3646

Noble Hospitality Fund Acquisitions, LLC
c/o David W. Cranshaw, Esq.
3343 Peachtree Rd., NE
1600 Atlanta Financial Center
Atlanta, GA 30326

Official Committee of Unsecured Creditors
c/o Paul M. Rosenblatt, Esq.
1100 Peachtree St., Suite 2800
Atlanta, GA 30309-4528

Official Members/Depositors Committee
c/o John Francis Gough, Esq.
One South Broad St., Ste. 1500
Avenue of the Arts
Philadelphia, PA 19107-3401

Official Members/Depositors Committee
c/o Donald R. Kirk, Esq.
Fowler White Boggs P.A.
Post Office Box 1438
Tampa, FL 33601-1438

Official Members/Depositors Committee
c/o Gerald Chalpin, Esq.
427 E. Mt. Pleasant Ave.
Philadelphia, PA 19119-1231

PRIAC Realty Investments, LLC
Attn: Grant T. Stein, Esq.
Alston & Bird, LLP
1201 West Peachtree St.
Atlanta, GA 30309-3424

PRIAC Realty Investments, LLC
c/o Grant T. Stein, Esq.
1201 West Peachtree St.
Atlanta, GA 30309-3449

Priac Realty Investments, LLC
c/o John Rogerson, Esq.
501 Riverside Ave., 7th Fl.
Jacksonville, FL 32202-4934

R&D Cooper, Ltd.
c/o George E. Ridge, Esq.
136 East Bay St., Ste. 301
Jacksonville, FL 32202-5409

Red Maple Investors, LLC
c/o Cynthia C. Jackson, Esq.
225 Water St., Ste. 1800
Jacksonville, FL 32202-5182

Richard A. Cooper
c/o Tiffiny Douglas Safi
136 East Bay St., Ste. 301
Jacksonville, FL 32202-5409

Richard A. Cooper, Trustee of
Trust No. 3 FBO Benjamin J. Cooper
c/o George E. Ridge
136 East Bay St., Ste. 301
Jacksonville, FL 32202-5409

Sysco Corporation
c/o Jeff Becker, P.A.
4100 Southpoint Dr.
Jacksonville, FL 32216-8017

Sysco Jacksonville, Inc.
c/o David J. Czerw
1501 Lewis Industrial Dr.
Jacksonville, FL 32254-1697

TCF Equipment Finance, Inc.
c/o Michael A. Tessitore Esq.
612 E. Colonial Drive, Suite 150
Orlando, FL 32803-4650

Textron Financial Corporation
c/o Keith Thomerson, Esq.
50 North Laura St., Ste. 2200
Jacksonville, FL 32202-3625

The City of Fernandina Beach, Florida
c/o Tammi E. Bach, Esq.
204 Ash St.
Fernandina Beach, FL 32034-4230

Therma Serve, Inc.
c/o Scott Royer
6676 Columbia Park Dr. S.
Jacksonville, FL 32258-4406

Time Inc.
c/o Shelia Vaughan
1271 Avenue of Americas, 05-51
New York, NY 10020-1300

United States Trustee
c/o Elena L. Escamilla, Esq.
135 W. Central Blvd., Ste. 620
Orlando, FL 32801-2440

Urbana Realty Advisors
c/o Allan Gutierrez
1420 Peachtree St., NE
Atlanta, GA 30309-3048

Valleycrest Golf Course Maintenance
c/o Ashley Wilson
24151 Ventura Blvd.
Calabasas, CA 91302-1449

Étiquettes faciles à peler
Utilisez le gabarit AVERY® 5160®

Sens de
chargement

Repliez à la hachure afin de
révéler le rebord Pop-Up™

www.avery.com
1-800-GO-AVERY

**Easy Peel° Labels**
**Use Avery® Template 5160®**

▲
Feed Paper

**Bend along line to**
**expose Pop-Up Edge™**


**AVERY® 8460™**

Williamson, James R. and Elizabeth
c/o J. Robert Williamson
Scroggins & Williamson
1500 Candler Building
127 Peachtree Street NE
Atlanta, GA 30303-1810

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)James M. and Beverly C. Crowley
1 Red Cedar Road
Amelia Island, FL 32034-5035

End of Label Matrix
Mailable recipients      60
Bypassed recipients       1
Total                    61

**Étiquettes faciles à peler**
**Utilisez le gabarit AVERY® 5160®**

▲
Sens de
chargement

Repliez à la hachure afin de
révéler le rebord Pop-Up™

www.avery.com
1-800-GO-AVERY

# EXHIBIT "1"

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| AMELIA ISLAND COMPANY, | ) | Case No. 3:09-bk-09601 |
| a Delaware corporation, | ) | |
| | ) | |
| Debtor. | ) | |

---

**AMENDED SALE PROCEDURES**
**ORDER (A) AUTHORIZING THE DEBTOR TO**
**ENTER INTO AN ASSET PURCHASE AGREEMENT FOR THE**
**SALE OF SUBSTANTIALLY ALL THE DEBTOR'S ASSETS; (B) APPROVING**
**BIDDING PROCEDURES AND OVERBID PROTECTIONS IN CONNECTION**
**THEREWITH; (C) APPROVING THE FORM AND MANNER OF NOTICE;**
**AND (D) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES**

Upon the motion (the "Motion") [Docket No. 505], dated May 25, 2010, filed by

Amelia Island Company ("AIC" or the "Debtor") for entry of orders, pursuant to

§§ 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy

Code"), and rules 2002, 6004, 6006, 9007, 9014 and 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), (a) authorizing AIC to enter into an asset

purchase agreement (the "APA") with Noble Hospitality Fund Acquisitions, LLC,

(b) approving bidding procedures and overbid protections in connection with the Sale[1] of the

Purchased Assets, (c) approving the form and manner of notice,

(d) scheduling the Auction and the Sale Hearing; and (e) approving procedures for

determining cure amounts (the "Cure Amounts"); the Court having reviewed the Motion, and

---

[1]    Capitalized terms not otherwise defined herein have the meanings ascribed thereto in the Motion, the
Bidding Procedures or the APA.

conducted a hearing to consider the relief requested therein (the "Hearing"); and having

heard argument of counsel and any evidence presented in support of the relief requested in

the Motion at the Hearing; the Court having considered the objections filed by Amelia Island

Plantation Community Association, Inc., PRIAC Realty Services, LLC ("PRIAC"), Compass

Bank ("Compass"), Mr. James Crowley and the Creditors' Committee, and any evidence

submitted in support thereof, and it appearing that due notice of the Motion was provided,

and it appearing that the relief requested in the Motion is in the best interests of AIC, its

estate, and its creditors and other parties in interest; and after due deliberation thereon, the

Court hereby makes the following findings of fact and conclusions of law:

**Findings of Fact and Conclusions of Law:**

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).

Venue of this case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and

1409.

2.    AIC has established the necessary facts to support the entry of an Order for

(a) the sale of substantially all of its Assets as provided in the APA, (b) the approval of the

Bidding Procedures, attached hereto as **Exhibit A** and incorporated herein by reference,

(c) the granting of a break-up fee (the "Break-Up Fee") and expense reimbursement (the

"Expense Reimbursement") to Noble in its role as stalking horse bidder, as provided herein,

in the APA, and in the Bidding Procedures, (d) the approval of the proposed procedures for

the assumption and assignment of the Assumed Contracts (the "Assumption and Assignment

- 2 -

Procedures"), and (e) the approval of the form and manner of notice (the "Contract Assumption Notice"), attached hereto as **Exhibit B**, of the deadline to object to the assumption and assignment of certain executory contracts and unexpired leases (collectively, the "Assumed Contracts") and for determining the Cure Amounts in connection therewith.

3.    Notice of the Motion was appropriate, and no other or further notice of the Motion, the Bidding Procedures or any other form of relief granted herein is or shall be required.

4.    The Break-up Fee and Expense Reimbursement, if any, to be paid by AIC to Noble pursuant to the APA, may be paid in accordance with the terms and conditions of the APA, and (a) are reasonable and appropriate in light of the size and nature of the proposed Sale, the commitments that have been made and the efforts that have been and will be expended by Noble, (b) are necessary to induce Noble to continue to pursue the Sale and to continue to be bound by the APA, (c) are fair, reasonable and equitable under the circumstances, (d) were negotiated by the parties at arm's length and in good faith, and (e) represents the exercise of AIC's business judgment.  Further, the Break-up Fee and Expense Reimbursement are actual and necessary costs and expenses of preserving AIC's estate within the meaning of §§ 503(b) and 507(a)(2) of the Bankruptcy Code.

5.    The Break-up Fee and Expense Reimbursement induced Noble to submit a bid that will serve as a minimum floor bid on which AIC, its creditors and other bidders may rely.  Noble has provided a material benefit to AIC and its creditors by increasing the likelihood that the best possible price for the Purchased Assets will be received.  The

negotiation of the provisions of the APA, including the Break-up Fee and Expense Reimbursement, were undertaken by Noble without collusion and in good faith.

6.      The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Purchased Assets.

7.      The Motion and the Contract Assumption Notice are reasonably calculated to provide counterparties to the Assumed Contracts with proper notice of the intended assumption and assignment of their executory contracts or unexpired leases, any Cure Amounts relating thereto and the Assumption and Assignment Procedures.

**It Is Therefore Ordered:**

8.      The Motion is GRANTED to the extent set forth herein.

9.      All objections to entry of this Order not otherwise addressed herein are hereby overruled.

10.     AIC is authorized to enter into the APA.

11.     The APA is hereby approved subject to the terms and conditions contained in this Order.

12.     This Order is deemed to be the Sale Procedure Order as provided in the APA.

13.     The Bidding Procedures are hereby approved and shall govern the sale process.  Bids that do not conform to the Bid Procedures will not be considered for participation in the Auction.  AIC is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

14.     The deadline to submit Preliminary Bid Documents (as defined in the Bidding Procedures) shall be 3:00 p.m. (prevailing Eastern Time) on July 22, 2010.

15.     The deadline to submit a Qualified Bid (as defined in the Bidding Procedures) shall be 3:00 p.m. (prevailing Eastern Time) on July 29, 2010 (the "Bid Deadline").

16.     As further described in the Bidding Procedures, AIC shall conduct the Auction if a Qualified Bid, other than the Noble bid under the APA, is received prior to the Bid Deadline. Reasonable notice of the time and place for the Auction will be given to all Qualified Bidders, including Noble. If no timely, conforming Qualified Bids other than the Noble bid under the APA, are submitted by the Bid Deadline, the Auction will not be held, Noble will be the Successful Bidder, and AIC will seek authority to consummate the transactions contemplated by the APA with Noble at the Sale Hearing.

17.     AIC may consider together as one bid two or more bids, including credit bids, to purchase a subset of the Purchased Assets, and to assume a subset of the Assumed Liabilities and identify them as a combined bid to purchase the Purchased Assets, and to assume the Assumed Liabilities, when such combined bid provides for higher or otherwise better value to AIC that exceeds the Minimum Bid Amount; provided further, however, that, no combined bid shall be a Qualified Bid (as defined herein) unless it provides for the purchase of all or substantially all of the Purchased Assets, the assumption of the Assumed Liabilities, and the consummation of the transactions contemplated in the APA.

18.     Any obligations of AIC contained in the APA that are intended to be performed prior to entry of an order by this Court approving the Sale, are hereby authorized and are fully enforceable as of the date of entry of this Order.

19.     The Court will hold the Sale Hearing in conjunction with the Confirmation Hearing, at which hearing it will consider approval of the sale to the Successful Bidder at the Auction.

20.     Objections, if any, to the Sale of the Purchased Assets must (a) be in writing, (b) state the basis of such objection with specificity, (c) conform to the Bankruptcy Rules, (d) be filed with the Court electronically by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, so as to be actually received no later than 3:00 p.m. (prevailing Eastern Time) seven (7) days before the Confirmation Hearing (the "Sale Objection Deadline"), provided, however, that objections to the assumption and assignment of the Assumed Contracts and the proposed Cure Amounts should be filed in accordance with the Assumption and Assignment Procedures set forth herein.

21.     The failure of any objecting person or entity to timely file its objection shall be a bar to the assertion of any objection to the Motion and the consummation and performance of the Sale, and shall be deemed to constitute such party's consent to the Sale and the transactions and documents related thereto.

22.     The Break-up Fee and Expense Reimbursement are hereby approved, and any and all objections thereto that were not consensually resolved at or before the Hearing are hereby overruled.

23.     AIC is authorized to pay to Noble in accordance with the terms of the APA, the Break-up Fee and Expense Reimbursement, without further order of the Court if Noble becomes entitled to payment from AIC under the APA for the Break-up Fee or the Expense Reimbursement.  Noble shall be and hereby is granted an allowed administrative claim in

AIC's Chapter 11 case in an amount equal to Break-up Fee and Expense Reimbursement, under §§ 503(b) and 507(a)(2) of the Bankruptcy Code if the conditions to entitlement to these amounts occur, and, if applicable, the Break-up Fee and Expense Reimbursement shall be paid at Closing from the proceeds, of the transaction with a purchaser.

24.    The following Assumption and Assignment Procedures shall govern the assumption and assignment of Assumed Contracts in connection with the Sale of the Acquired Assets to Noble:

(a)    Initial Contract Designations. On or before July 16, 2010, AIC shall file with this Court and serve on each non-debtor counterparty to an executory contract or unexpired lease with AIC (each, a "Non-Debtor Counterparty") that AIC intends to assume and assign to Noble, a notice of assumption and assignment of executory contracts and unexpired leases in substantially the form of the Contract Assumption Notice attached hereto as **Exhibit B**. AIC shall attach to the Contract Assumption Notice a list identifying the Non-Debtor Counterparties to the Assumed Contracts and the corresponding Cure Amounts under the Assumed Contracts. In addition, AIC shall serve a copy of the Contract Assumption Notice on a Non-Debtor Counterparty's counsel of record, if any, as of the date of the Contract Assumption Notice ("Counsel of Record").

(b)    Information in Assumption Notice. For each Assumed Contract, on the Contract Assumption Notice, AIC shall either (i) indicate the proposed Cure Amounts relating to such Assumed Contract or (ii) provide an amount representing the proposed Cure Amounts for multiple Assumed Contracts with the same Non-Debtor Counterparty, subject, upon request, to providing greater detail to a Non-Debtor Counterparty to identify on a contract-by-contract basis the proposed applicable Cure Amounts to the extent reasonably available. On a Contract Assumption Notice, Assumed Contracts may be listed individually or in groups of agreements with the Non-Debtor Counterparty, as long as the Non-Debtor Counterparty is provided with sufficient information to identify the contracts to be assumed and assigned. The Contract Assumption Notice also may identify any additional proposed terms or conditions of assumption and assignment.

(c)     If a party other than Noble is the Successful Bidder, or if a transaction other than the Sale to Noble is consummated for the Purchased Assets in accordance with the Bidding Procedures, then these Assumption and Assignment Procedures may be modified if necessary by further order of this Court.

(d)     If the Auction results in a Successful Bidder other than Noble, parties who have previously received notice of assumption and assignment shall have ten (10) days after the Auction to file an objection related to adequate assurance of future performance or related to whether applicable law excuses the party from accepting performance by, or rendering performance to, the Successful Bidder for purposes of § 365(c)(1) of the Bankruptcy Code.

(e)     Additional Contract Assumption Designations.    Noble or the Successful Bidder, as the case may be, may designate, up to three (3) Business Days prior to the Closing Date, (the "Assumption Designation Deadline"), additional executory contracts and unexpired leases as agreements to be assumed by AIC and assigned to Noble pursuant to the APA. AIC shall serve a Contract Assumption Notice on each of the Non-Debtor Counterparties to such Assumed Contracts and their counsel of record, if any, indicating (i) that the notice recipient is a Non-Debtor Counterparty to one or more executory contracts or unexpired leases with AIC that AIC intends to assume and assign to Noble and (ii) the corresponding Cure Amount under the Assumed Contracts as of the date of such Contract Assumption Notice.

(f)     Contract Removal Designations.    In accordance with the APA, Noble may remove executory contracts and unexpired leases as agreements to be assumed by AIC and assigned to Noble pursuant to the APA (the "Removed Contracts") until three (3) Business Days prior to the Closing Date. Upon Noble's notice to AIC of a removal of a specific Removed Contract, or a group thereof, AIC shall serve a notice (a "Removal Notice") on each of the Non-Debtor Counterparties to such Removed Contracts and their Counsel of Record, indicating that the notice recipient is a Non-Debtor Counterparty to one or more executory contracts or unexpired leases with AIC that AIC no longer intends to assume and assign to Noble in connection with the Sale.

(g)     Section 365 Objections.    Objections, if any ("§ 365 Objections"), to the proposed Cure Amounts, or to the proposed assumption and assignment of the Assumed Contracts, including objections related to adequate assurance of future performance or objections relating to whether applicable law excuses the Non-Debtor Counterparty from

accepting performance by, or rendering performance to, Noble for purposes of § 365(c)(l) of the Bankruptcy Code, must (a) be in writing; (b) state with specificity the nature of such objection and the alleged Cure Amounts (with appropriate documentation in support thereof); (c) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules of this Court, and (d) be filed with the Court and served on the Rule 1007(d) list of Notice Parties so as to be received no later than twenty (20) days after service of a Contract Assumption Notice for the Assumed Contracts (the "§ 365 Objection Deadline").

(h)     Where a Non-Debtor Counterparty to an Assumed Contract files a § 365 Objection, objecting to the assumption by AIC and assignment to Noble of such Assumed Contract and/or asserting a cure amount higher than the proposed Cure Amounts listed on the Contract Assumption Notice, AIC, Noble and the Non-Debtor Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Court intervention.

(i)     Section 365 Hearing.  If any of AIC, the Non-Debtor Counterparty or Noble determines that the objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the Assumed Contract and/or the Cure Amounts will be determined by the Court at the Sale Hearing or a hearing established for such purpose (a "§ 365 Hearing") to occur after the Sale Hearing, unless AIC, Noble and the Non-Debtor Counterparty to the Assumed Contract in dispute agree otherwise. If the Court determines at a § 365 Hearing that the Assumed Contract cannot be assumed and assigned, or establishes Cure Amounts that Noble is not willing to pay, then such executory contract or unexpired lease shall no longer be considered an Assumed Contract.

(j)     Consent to Assumption and Assignment.   Any Non-Debtor Counterparty to an Assumed Contract who fails to file a timely § 365 Objection to the proposed Cure Amounts or the proposed assumption and assignment of an Assumed Contract by the § 365 Objection Deadline is deemed to have consented to (i) such Cure Amounts, (ii) the assumption and assignment of such Assumed Contract, (iii) the related relief requested in the Sale Motion and (iv) the Sale. Such party shall be forever barred and estopped from objecting to the Cure Amounts, the assumption and assignment of the Assumed Contract, adequate assurance of future performance, the relief requested in the Sale Motion, whether applicable law excuses the Non-Debtor Counterparty from accepting performance by, or rendering

performance to, Noble for purposes of § 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against AIC, its estate and Noble with respect to such party's executory contract(s) or unexpired lease(s).

(k)     Resolution of Assumption/Assignment Issues.   If the non-debtor Counterparty to an Assumed Contract fails to timely assert a § 365 Objection as described in subparagraph (g) above, or upon the resolution of any timely § 365 Objection by agreement of the parties or order of the Court approving an assumption and assignment, such Assumed Contract shall be deemed to be assumed without the need for provision of adequate assurance by AIC and assigned to Noble and the proposed Cure Amount related to such Assumed Contract shall be established and approved in all respects.

(l)     Conditions on Assumption and Assignment. AIC' decision to assume and assign the Assumed Contracts is subject to Court approval and consummation of the Sale. Accordingly, subject to the satisfaction of conditions above to address any cure or assignment disputes, AIC shall be deemed to have assumed and assigned to Noble each of the Assumed Contracts as of the date of and effective only upon the Closing, and absent such closing, each of the Assumed Contracts shall neither be deemed assumed nor assigned and shall in all respects be subject to subsequent assumption or rejection by AIC under the Bankruptcy Code.   Assumption and assignment of the Assumed Contracts also is subject to Noble's rights set forth in subparagraphs (e) and (f) above. Noble shall have no rights in and to a particular Assumed Contract until such time as the particular Assumed Contract has been identified by Noble as an Assumed Contract and is assumed and assigned in accordance with the procedures set forth herein.

25.     Notice of the Motion constitutes good, sufficient and timely notice, and no other or further notice shall be required, other than service of a copy of this Order by first class mail postage prepaid upon the Notice Parties.

26.     Notwithstanding Rules 6004(h), 6006(d), 7062, or 9014 of the Federal Rules of Bankruptcy Procedure or Rule 62(a) of the Federal Rules of Civil Procedure, this order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of this Order.

27.    The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order

DONE and ORDERED on ~~June~~ July 9, 2010 in Jacksonville, Florida.

_____
Paul M. Glenn
Chief United States Bankruptcy Judge

Exhibits:

A - Bid Procedures
B - Assignment Notice

Copies furnished to the Rule 1007(d)
list of creditors and other parties in interest.

- 11 -

**<u>Exhibit A – Bidding Procedures</u>**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
<u>**JACKSONVILLE DIVISION**</u>

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| AMELIA ISLAND COMPANY, | ) | Case No. 3:09-bk-09601 |
| a Delaware corporation, | ) | |
| Debtor. | ) | |

---

<u>**BIDDING PROCEDURES**</u>

These Bidding Procedures (the "Bidding Procedures") set forth the process by which Amelia Island Company ("AIC") is authorized to conduct the sale (the "Sale") by auction (the "Auction") of substantially all of AIC's assets, defined as the "Purchased Assets"[1] in the Asset Purchase Agreement, dated May 18, 2010 (as may be amended) among the Debtor, Amelia Island Management, Inc., Amelia Island Realty, and R&D Cooper, Ltd. (the "APA"), as sellers, and Noble Hospitality Fund Acquisitions, LLC, as buyer, and joined by Richard A. Cooper and Robert N. Gudbranson, each as trustees under two separate Trust Agreements each dated December 31, 1985, and each known as Trust Agreement of Richard L. Cooper, Ltd., or such other Asset Purchase Agreement submitted at or prior to the Auction and subsequently determined by the Debtor to be the highest or otherwise best offer for the Purchased Assets and approved by the Bankruptcy Court. Capitalized terms used herein but not otherwise defined shall have the meanings set forth in the APA.

---

[1]    Under the APA, the Purchased Assets include certain non-debtor Ancillary Assets included in the Sale.

These Bidding Procedures have been approved by an order dated July 3, 2010 (the "Sales Procedures Order"), entered by the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "Bankruptcy Court"), in which the Chapter 11 bankruptcy case, Case No. 3:09-bk-9601 of AIC is pending.

**Assets to be Sold**

1.      These Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in the Auction, thereby competing to make the highest or otherwise best offer for all or substantially all of the Purchased Assets, as identified in further detail and defined in the APA.

**Participation Requirements**

2.      These Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in the Auction, thereby competing to make the highest or otherwise best offer for all or substantially all of the Purchased Assets, as identified in further detail and defined in the APA.

3.      To participate in the bidding process or otherwise be considered for any purpose hereunder, an entity interested in the Purchased Assets (a "Potential Bidder") must, on or before July 22, 2010 at 3:00 p.m. (prevailing Eastern Time), deliver to AIC the following documents (the "Preliminary Bid Documents") to participate in the bidding process:

(a)      an executed confidentiality agreement (each, a "Confidentiality Agreement") reasonably acceptable to AIC and containing terms in

the aggregate no less favorable to AIC in any material respect (other than with respect to the effective periods and the non-disclosure and non-solicitation provisions contained therein, all of which terms shall be commercially reasonable) than those contained in the confidentiality agreement by and among Noble and AIC;

(b)     a non-binding indication of interest with respect to the purchase of the Purchased Assets, and the assumption of the Assumed Liabilities; and

(c)     preliminary proof by the Potential Bidder of its financial capacity to close a proposed transaction, which may include current audited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which AIC and its advisors will determine after consultation with the advisors for the Lenders and the Committee.

4.     Within five (5) Business Days after a Potential Bidder delivers the Preliminary Bid Documents, AIC, after consulting with PRIAC Realty Services, LLC ("PRIAC"), Compass Bank ("Compass"), Amelia Island Company, Inc. ("AICI") and the Creditors' Committee, shall notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents so that the Potential Bidder may conduct a due diligence review.   Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents (each, an "Acceptable Bidder") may submit bids to purchase the Purchased Assets.   Noble shall at all times be deemed an Acceptable Bidder.

**Obtaining Due Diligence Access**

5.     After receipt of an executed Confidentiality Agreement and notification of Acceptable Bidder status, AIC shall provide each Acceptable Bidder reasonable due

- 3 -

diligence information, as requested, as soon as reasonably practicable after such request. The due diligence period will end on July 29, 2010.

6.    In connection with the provision of due diligence information to Acceptable Bidders, AIC shall not furnish any confidential information relating to AIC, the Purchased Assets, or the Sale to any person except an Acceptable Bidder or such bidder's duly-authorized representatives to the extent provided in the Confidentiality Agreement.

7.    AIC shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

**Bid Requirements**

8.    To participate in the Auction, an Acceptable Bidder (other than Noble) must deliver to AIC a written irrevocable offer that must:

> (a)    be in writing;
>
> (b)    authorize AIC to provide the bid to Noble, PRIAC, Compass, AICI and the Creditors' Committee, and AIC shall promptly do so after receipt of any such offer;
>
> (c)    equal or exceed $48,469,000, which is the sum of the following: (i) the Sales Proceeds of $47,400,000; (ii) the Break-up Fee of $469,000; (iii) the Expense Reimbursement of $500,000; and (iv) the minimum bid increment of $100,000 (such aggregate sum, the "Minimum Bid Amount") (all of which must be in cash, marketable securities that are freely tradable with readily ascertainable value, and/or the assumption of administrative expense liabilities, except in the event of a credit bid by PRIAC or Compass); *provided, however*, that the Successful Bid may be for a subset of the Purchased Assets if it otherwise constitutes a

Qualified Bid (including that it satisfies the requirements of these Bidding Procedures) and is the highest or otherwise best bid as determined by AIC after consulting with PRIAC, Compass, AICI and the Creditors' Committee in accordance with these Bidding Procedures;

(d)   constitute a good faith, bona fide offer to purchase all of the Purchased Assets, and to assume the Assumed Liabilities; *provided, however,* that AIC may consider together as one bid two or more bids, including credit bids, to purchase a subset of the Purchased Assets, and to assume a subset of the Assumed Liabilities and identify them as a combined bid to purchase the Purchased Assets, and to assume the Assumed Liabilities, when such combined bid provides for higher or otherwise better value to AIC that exceeds the Minimum Bid Amount; provided further, however, that, no combined bid shall be a Qualified Bid (as defined herein) unless it provides for the purchase of all or substantially all of the Purchased Assets, the assumption of the Assumed Liabilities, and the consummation of the transactions contemplated in the APA;

(e)   be accompanied by a clean and a duly executed copy of the APA and the documents set forth as exhibits thereto, along with copies that are marked to reflect the amendments and modifications from the APA executed with Noble, which may not be materially more burdensome to AIC or inconsistent with these Bidding Procedures;

(f)   identify with particularity each and every condition to closing, including the executory contracts and unexpired leases for which assumption and assignment is required;

(g)   not be conditioned on any contingency, including, among others, on obtaining any of the following: (i) financing, (ii) shareholder, board of directors or other approval, and/or (iii) the outcome or completion of a due diligence review by the Potential Bidder; and

(h)   must remain irrevocable until 48 hours after the Auction.

9.   In addition to the above, each Acceptable Bidder must:

(a)   provide AIC, PRIAC, Compass, AICI and the Creditors' Committee, on or before the Bid Deadline, with sufficient and adequate information to demonstrate, to the satisfaction of AIC, after consulting with PRIAC, Compass, AICI and the Creditors'

- 5 -

Committee, that such Potential Bidder has the financial ability to consummate the acquisition of the Purchased Assets, and the assumption of the Assumed Liabilities;

(b)     fully disclose the identity of each entity that will be bidding for or purchasing the Purchased Assets, or otherwise participating in connection with such bid, and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties;

(c)     on or before the Bid Deadline, submit a cash deposit equal to $4,000,000 by wire transfer of immediately available funds to an account or accounts designated by AIC (the "Good Faith Deposit"); and

(d)     not be entitled to any break-up fee, transaction fee, termination fee, expense reimbursement or any similar type of payment or reimbursement.

10.    Bids fulfilling all of the preceding requirements shall be deemed to be "Qualified Bids," and those parties submitting Qualified Bids shall be deemed to be "Qualified Bidders." Within five (5) Business Days after the Bid Deadline, AIC, in consultation with PRIAC, Compass, AICI and the Creditors' Committee, shall determine which Acceptable Bidders are Qualified Bidders and will notify the Acceptable Bidders and Noble whether their bids constitute Qualified Bids so as to enable such Qualified Bidders to bid at the Auction. The APA submitted by Noble and any additional bids timely submitted by Noble (to the extent such bids are generally consistent with the terms of the APA) shall be deemed Qualified Bids, qualifying Noble to participate in the Auction.

**Bid Deadline**

11.     Binding bids must be received by AIC so as to be actually received no later than 3:00 p.m. (prevailing Eastern Time) on July 29, 2010 (the "Bid Deadline").

**Evaluation of Qualified Bids**

12.     Prior to the Auction, AIC shall evaluate Qualified Bids and, after consulting with PRIAC, Compass, AICI and the Creditors' Committee, identify the Qualified Bid that is, in AIC's judgment, the highest or otherwise best bid (the "Starting Bid"). Within 24 hours of such determination, AIC shall notify all Qualified Bidders as to which Qualified Bid is the Starting Bid. AIC shall distribute copies of all Qualified Bids to each Qualified Bidder who has submitted a Qualified Bid.

**No Qualified Bids**

13.     If no Qualified Bids are received by the Bid Deadline, then the Auction will not occur, the APA will be deemed the Successful Bid (as defined herein), and AIC will pursue entry of an order by the Bankruptcy Court approving the APA and authorizing the sale of the Purchased Assets to Noble.

**Auction**

14.     If one or more Qualified Bids are received by the Bid Deadline, then AIC shall conduct an auction (the "Auction") with respect to the Purchased Assets. The Auction shall be conducted before and at the direction of the Honorable Paul M. Glenn,

Chief United States Bankruptcy Judge, in the Bryan Simpson United States Courthouse, Room 4A, 300 North Hogan Street, Jacksonville, Florida 32202. The Debtor shall request that the Bankruptcy Court conduct the Auction three (3) Business Days prior to the confirmation hearing.

     15. The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

     (a)    the Auction will be conducted openly;

     (b)    only the Qualified Bidders, including Noble, shall be entitled to bid at the Auction;

     (c)    PRIAC may credit bid up to the outstanding balance of its loans if the Auction fails to produce a Successful Bidder with the purchase price for the Purchased Assets of $47.4 million.

     (d)    Compass may credit bid up to the outstanding balance of its loans if the Auction fails to produce a Successful Bidder with the purchase price for the Purchased Assets of $47.4 million.

     (e)    the Qualified Bidders, including Noble, shall appear in person at the Auction, or through duly-authorized representatives;

     (f)    only such authorized representatives of each of the Qualified Bidders, Noble, AIC, PRIAC, Compass, AICI, the Creditors' Committee, and their respective advisors shall be permitted to attend the Auction;

     (g)    bidding at the Auction shall begin at the Starting Bid;

     (h)    subsequent bids at the Auction, including any bids by Noble, shall be made in minimum increments of $100,000 over the previous bid;

     (i)    Noble shall receive a credit equal to the amount of the Break-up Fee and the Expense Reimbursement when bidding at the Auction. By way of example, if Noble is the successful bidder at the Auction with a total bid of $50,000,000, then Noble will actually be required to pay $49,031,000, which amount reflects application

-8-

of a credit for the full Expense Reimbursement of $500,000 plus a Break-Up Fee of $469,000;

(j)    the bidding will be conducted in public with all Qualified Bidders able to participate in the public portions of the Auction, and the bidding at the Auction shall be transcribed to ensure an accurate recording of the bidding at the Auction;

(k)    each bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale;

(l)    the provisions hereof will bind and inure to the benefit of the Debtor, PRIAC, and Compass, and their respective successors, transferees, and assigns; and

(m)    absent irregularities in the conduct of the Auction, the Bankruptcy Court will not consider bids made after the Auction is closed.

**Acceptance of the Successful Bid**

16.    Upon the conclusion of the Auction (if the Auction is conducted), AIC, in the exercise of its reasonable, good-faith business judgment and after consulting with PRIAC, Compass, AICI, and the Creditors' Committee, shall identify the highest or otherwise best bid (the "Successful Bid"). The Qualified Bidder having submitted a Successful Bid will be deemed the "Successful Bidder". The Successful Bidder and AIC shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments or other documents evidencing and containing the terms upon which such Successful Bid was made.

17.    The Bankruptcy Court will conduct a hearing to approve the Sale to the Successful Bidder in conjunction with the hearing to confirm AIC's plan of reorganization. AIC will request the Bankruptcy Court make certain findings regarding

the Auction, including, among other things, that (a) the Auction was conducted and the Successful Bidder was selected in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, (c) the Successful Bid was a Qualified Bid as defined in these Bidding Procedures, and (d) consummation of the Sale contemplated by the Successful Bid will provide the highest or otherwise best value for the Purchased Assets, and is in the best interests of AIC and its estate.

18.    If an Auction is held, AIC shall be deemed to have accepted a Qualified Bid only when (a) such bid is declared the Successful Bid at the Auction and (b) definitive documentation has been executed in respect thereof.  Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid and the entry of an order approving such Successful Bid.

**Designation of Back-Up Bidder**

19.    If for any reason the Successful Bidder fails to consummate the purchase of the Purchased Assets within the time permitted after the entry of the order approving the Sale to the Successful Bidder, then the Qualified Bidder with the second highest or otherwise best bid for the Purchased Assets (the "Back-Up Bidder"), as determined by AIC, after consultation with PRIAC, Compass, AICI and the Creditors' Committee, at the conclusion of the Auction and announced at that time to all the bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best bid, and AIC and the Back-Up Bidder will be authorized, but not required, to consummate the Sale with the Back-Up Bidder as soon as is commercially reasonable without further

- 10 -

order of the Bankruptcy Court upon at least 24 hours advance notice, which notice will be filed with the Bankruptcy Court.

**Break-Up Fee and Expense Reimbursement**

20.    If the sale closes with an entity other than Noble, AIC shall be obligated to pay to Noble, by wire transfer in immediately available funds to an account designated by Noble, the Break-up Fee and the Expense Reimbursement, in each instance in accordance with the applicable provisions of the APA.

**Return of Good Faith Deposit**

21.    The Good Faith Deposit of the Successful Bidder shall, upon consummation of the purchase of the Purchased Assets, be credited to the purchase price paid for the Purchased Assets. If the Successful Bidder fails to consummate the purchase of the Purchased Assets (other than as a result of a material breach of the APA by AIC), then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, AIC.

22.    The Good Faith Deposit of any unsuccessful Qualified Bidders (except for Noble) will be returned within 15 days after consummation of the Sale or upon the permanent withdrawal of the proposed Sale of the Purchased Assets. The Good Faith Deposit of Noble shall be returned in accordance with the terms of the APA.

**<u>Exhibit B - Contract Assumption Notice</u>**

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
| AMELIA ISLAND COMPANY,<br>a Delaware corporation, | )<br>)<br>) | Case No. 3:09-bk-09601 |
| Debtor. | ) | |

## NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT
## OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE THAT** the above-captioned debtor ("AIC") filed a voluntary petition for relief under chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "Bankruptcy Court") on November 13, 2009 (the "Petition Date").

**PLEASE TAKE FURTHER NOTICE THAT** on May 25, 2010, in connection with the proposed sale (the "Sale") of substantially all of AIC's assets of certain nondebtors (collectively the "Purchased Assets") Noble Hospitality Fund Acquisitions, LLC( "Noble") or any other Successful Bidder for the Purchased Assets at an auction for the Purchased Assets (the "Auction"), AIC filed a motion [Docket No. 505] (the "Sale Motion") seeking, among other things, the entry of an order approving (a) bidding procedures governing the Sale, (b) the form of asset and equity purchase agreement for the Purchased Assets, (c) payment of a break-up fee and expense reimbursement to Noble in certain instances, including if Noble is not the Successful Bidder at the Auction, (d) the form and manner of notices; and (e) procedures relating to the assumption and assignment of executory contracts and unexpired leases in connection with the Sale.

**PLEASE TAKE FURTHER NOTICE THAT** on [_], 2010, the Bankruptcy Court entered an order [Docket No. _] (the "Sale Procedure Order") granting certain of the relief sought in the Sale Motion, including, among other things, approving (a) the bidding procedures (the "Bidding Procedures") for the Sale of the Purchased Assets and (b) procedures for the assumption and assignment of executory contracts and unexpired leases (the "Assumption and Assignment Procedures"). Copies of the Sale Procedure Order (which incorporates the Assumption and Assignment Procedures) and the Bidding Procedures are enclosed herein.

**PLEASE TAKE FURTHER NOTICE THAT** upon the closing of the Sale, AIC intends to assume and assign to Noble or any other Successful Bidder the executory contracts and unexpired leases (collectively, the "Assumed Contracts") set forth on Exhibit A hereto. In addition, the cure amounts, if any, necessary for the assumption and assignment of the Assumed Contracts (the "Cure Amounts") are set forth on **Exhibit A.**

**YOU ARE RECEIVING THIS NOTICE BECAUSE NOBLE HAS IDENTIFIED YOU AS A COUNTERPARTY TO AN ASSUMED CONTRACT.** Under the terms of the Assumption and Assignment Procedures, Noble, or the Successful Bidder may modify the list of Assumed Contracts until three (3) Business Days prior to the Closing Date.

**Obtaining Additional Information**

Additional copies of the Sale Procedure Order, the Bidding Procedures and any other related documents are available upon request to Logan & Company, Inc., AIC's noticing agent by visiting their website at http://www.loganandco.com.

**Important Dates and Deadlines**

The deadline to submit a Qualified Bid is July 29, 2010.

The deadline to file an objection with the Bankruptcy Court to the entry of an order approving the sale (the "Sale Order") is seven (7) days prior to the hearing to consider confirmation of AIC's Plan of Reorganization.

The Debtor shall request that the Bankruptcy Court conduct the Auction three (3) days prior to the confirmation hearing. The Auction shall be conducted before and at the direction of the Honorable Paul M. Glenn, Chief United States Bankruptcy Judge, in the Bryan Simpson United States Courthouse, Room 4A, 300 North Hogan Street, Jacksonville, Florida 32202, if one or more Qualified Bids are received by the Bid Deadline.

A hearing (the "Sale Hearing") to consider the proposed Sale will be held in conjunction with the Confirmation Hearing.

**Filing Assumption and Assignment Objections**

Pursuant to the Assumption and Assignment Procedures, objections to the proposed assumption and assignment of an Assumed Contract, including any objection relating to the Cure Amount and/or adequate assurance of future performance, must: (a) be in writing;

(b) state with specificity the nature of such objection and alleged Cure Amount, including applicable and appropriate documentation in support of such alleged Cure Amount; (c) comply with the Federal Rules of Bankruptcy Procedure; and (d) be filed with the Bankruptcy Court and served so as to be actually received on or before August 5, 2010 or for those counterparties receiving this notice after August 5, 2010, ten (10) days after service of this notice.

If the Auction results in a Successful Bidder other than Noble, parties who have previously received this notice shall have ten (10) days after the Auction to file an objection related to adequate assurance of future performance or related to whether applicable law excuses the party from accepting performance by, or rendering performance to, the Successful Bidder for purposes of § 365(c)(1) of the Bankruptcy Code.

Any objections will be considered at the Sale Hearing, or as soon thereafter as counsel may be heard, and must be served on the following parties:

**CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION: ANY COUNTERPARTY TO AN ASSUMED CONTRACT WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE PROPOSED ASSUMPTION AND ASSIGNMENT OF AN ASSUMED CONTRACT IN ACCORDANCE WITH THE SALES PROCEDURE ORDER AND THE ASSUMPTION AND ASSIGNMENT PROCEDURES SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE ASSUMPTION AND ASSIGNMENT OF THE ASSUMED CONTRACT AND/OR THE CURE AMOUNT SET FORTH ON EXHBIT 1,**

**INCLUDING ASSERTING ADDITIONAL CURE AMOUNTS WITH RESPECT TO THE ASSUMED CONTRACT RELATING TO ANY PERIOD PRIOR TO THE TIME OF ASSUMPTION AND ASSIGNMENT.**